# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
SIDNEY BROUSSARD,
Personal Representative of the
Estate of DANA BROUSSARD,

               Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

               Respondent.
* * * * * * * * * * * * * * * * * * * *

No. 18-302V
Special Master Christian J. Moran

Filed: September 3, 2025

<u>Ronald Homer and Joseph Pepper</u>, Conway Homer, P.C., for petitioner;
<u>Mark Hellie</u>, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

     Pending before the Court is petitioner Sydney Broussard's motion for final attorneys' fees and costs. He is awarded a total of **$166,484.87**.

---

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

## I.     Procedural History

Sydney Broussard's wife, Dana Broussard, alleged that the hepatitis B vaccination caused her to suffer transverse myelitis and neuromyelitis optica. Pet., filed Feb. 28, 2018. Following the Secretary's contesting of entitlement, petitioner retained Dr. Salvatore Napoli, a neurologist. Dr. Napoli produced two expert reports. Once all expert reports were submitted, the parties argued in legal memorandum and an entitlement hearing was held on June 2, 2022.

After the hearing, Dana Broussard passed away. With the assistance of an attorney, Sydney Broussard was appointed the representative of his wife's estate. Mr. Broussard also became the petitioner in this action.

Mr. Broussard submitted one brief after the hearing. However, his arguments were found not persuasive. A decision issued on April 4, 2024, denied compensation. 2024 WL 1829210.

On November 4, 2024, petitioner filed a motion for final attorneys' fees and costs ("Fees App."). The petitioner requests attorneys' fees of $142,330.85, attorneys' costs of $25,112.66, and $41.36 for petitioner's incurred costs for a total request of $167,484.87. Fees App. at 2. On November 18, 2024, respondent responded to petitioner's motion with his boilerplate response. Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." Response at 1. Respondent adds, however that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Id at 2. Additionally, he recommends "that the Court exercise its discretion" when determining a reasonable award for attorneys' fees and costs. Id. at 3.

An independent review of the fee application raised various questions. Order, issued Apr. 22, 2025. Mr. Broussard replied. Pet'r's Status Rep., filed June 17, 2025. A recorded status conference / oral argument was held on July 8, 2025.

## II.     Eligibility for Attorneys' Fees

Although compensation was denied, petitioners who bring their petitions in good faith and who have a reasonable basis for their petitions may be awarded attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1). In this case, although petitioner's claim was ultimately unsuccessful, good faith and reasonable basis existed throughout the matter. Respondent has also indicated that he is satisfied

2

that the claim has good faith and reasonable basis. Respondent's position greatly contributes to the finding of reasonable basis. See Greenlaw v. United States, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). A final award of reasonable attorneys' fees and costs is therefore proper in this case and the remaining question is whether the requested fees and costs are reasonable.

### III.  Reasonable Amount of Attorneys' Fees and Costs

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018). Mr. Broussard's application is divided into two components: attorneys' fees and attorneys' costs.

#### A.  Reasonable Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

##### 1.  Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation. Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower. Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, all the attorneys' work was done outside of the District of Columbia.

The billing records indicate that the majority of attorney hours were billed by Mr. Joseph Pepper but, as is typical at this firm, several other attorneys have provided assistance at various stages in the case. These attorneys are Mr. Ronald

3

Homer, Ms. Christina Ciampolilo, Ms. Meredith Daniels, and Mr. Patrick Kelly. The requested rates are consistent with what the attorneys of Conway, Homer, P.C., have previously been awarded for their Vaccine Program work, and the proposed hourly rates are reasonable for work performed in the instant case. See Kaiser v. Sec'y of Health & Human Servs., No. 20-1096V, 2023 WL 2622520 (Fed. Cl. Spec. Mstr. Mar. 24, 2023).

        2.        Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable. Nevertheless, three topics merit attention.

        a)        *Attorneys Other than Mr. Pepper*

When the petition was filed in 2018, Mr. Pepper had practiced in the Vaccine Program for approximately seven years. His billing rate was $305.00 per hour. Although Mr. Pepper handled all substantive matters, counsel of record was Ronald Homer.

It is common practice for Conway, Homer, P.C. to have several attorneys assist over the course of a case. Special masters have often noted that the involvement of multiple attorneys in relatively routine matters such as preparing a motion for enlargement of time results in excessive billing for duplicate work. See Order, issued March 1, 2018, at 3 (noting a concern about having multiple attorneys work on a case). See, e.g., Manetta v. Sec'y of Health & Human Servs., No. 18-172V, 2020 WL 7392813, at *2 (Fed. Cl. Spec. Mstr. Nov 19, 2020); Lyons v. Sec'y of Health & Human Servs., No. 18-414V, 2020 WL 6578229 (Fed. Cl. Spec. Mstr. Oct. 2, 2020). To the credit of the attorneys at Conway, Homer, the frequency of two associate attorneys billing for routine matters has decreased. See, e.g., entry for Sep. 24, 2018 (invoice at page 37 / pdf 23).

The present issue is a variation on that theme. The question was whether Mr. Homer's supervisory role in reviewing orders was reasonable. In the undersigned's experience, experienced attorneys such as Mr. Pepper can (and do) competently represent petitioners in the Vaccine Program without extensive oversight from even more experienced attorneys. Thus, arguably, a client would not pay for oversight. Special masters have differed on the reasonableness of Mr. Homer's work.

4

The undersigned finds Mr. Homer's supervisory activities reasonable and, therefore, compensable. Several reasons support this finding. First and most importantly, the Secretary did not object to compensating Mr. Homer's work. The Secretary's failure "to identify with particularity" this objection merits "consideration." Vaccine Rule 13(a)(3).

Second, Mr. Homer's efforts did not duplicate Mr. Pepper's work, at least not as far as billing goes. For example, Mr. Homer charged 0.1 hours to review the appearance of the Secretary's attorney. Invoice at 27 / pdf 18 (Mar. 8, 2018). However, Mr. Pepper did not bill for a similar activity, although Mr. Pepper presumably learned the identity of the attorney representing the opposing party. This lack of billing from Mr. Pepper mitigates Mr. Homer's participation because *someone* in the law firm can reasonably charge for reviewing the notice of appearance.

Third, Mr. Homer has persuasively explained that his role as a supervisory attorney strengthens his firm's overall practice. His admittedly cursory review of orders allows him to see issues that run across cases that the individuals handling the individual cases might miss.

Consequently, all of Mr. Homer's fees are accepted as reasonable.

### b) *Paralegals Billing for Clerical Work*

Under various fee-shifting regimes, attorneys may charge for tasks performed by paralegals. The justification is that the paralegal is stepping in for an attorney and charging a lower hourly rate for work an attorney would otherwise perform. However, attorneys may not charge for clerical tasks because the attorney's hourly rate reflects overhead expenses, such as employing a secretary. Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989); Bennett v. Dep't of Navy, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407-08 (1997).

The dichotomy between paralegal activities (billable) and clerical activities (non-billable) is often announced. However, a general principle to differentiate them is somewhat elusive. To qualify as a paralegal, a person needs special training and experience. See Impresa Construzioni Geom. Demenico Garufi v. United States, 100 Fed. Cl. 750, 768 (2011); see also Pressly v. United States, No. 18-1964, 2025 WL 1780947, at *12 (Fed. Cl. May 12, 2025); Fee App'l, tab D at 4 (describing qualifications of Conway Homer's paralegals). Thus, one way to

5

categorize whether activities can be billed is to ask whether the activity required special skills.

A typical example of a duty paralegals perform is the summarization of medical records.  See Fields for Estate of Lawrence v. Sec'y of Health & Hum. Servs., No. 17-1056V, 2022 WL 3569300, at *4 (Fed. Cl. Spec. Mstr. July 27, 2022) (reducing attorney's fees by approximately $17,000 because an attorney, not a paralegal, summarized medical records), mot. for rev. denied, 2022 WL 4100173 (Fed. Cl. Aug. 23, 2022).  The person reading and condensing the medical records must have knowledge of the claim and how specific medical records could be relevant to a claim.  For example, with Ms. Broussard's neuromyelitis optica, all records created by a neurologist are highly relevant.  But, any records from a gastroenterologist are probably less relevant and would not need to be summarized in as much detail as the records from a neurologist.  Paralegals at Conway Homer spent hours summarizing medical records.  Time spent summarizing medical records is reasonable.

However, paralegals also performed tasks that do not require any special training.  For example, they review medical records for legibility, they create electronic copies, they paginate records, and they run optical character recognition ("OCR") on records.  Pet'r's Status Rep't at 4-5.  But, these activities do not require any special training.  Indeed, the last three items (copying, paginating, and OCRing) are done by machines and/or computer programs with minimal human input.  Other activities that are considered clerical tasks include mailing documents and filing documents.  To be clear, there is no prohibition on performing clerical tasks, such as OCRing medical records.  Some clerical tasks are essential, such as filing documents.  But, the employment of the person who can perform clerical tasks is built into the attorneys' high hourly rate as part of overhead.  See Pickens v. Sec'y of Health & Hum. Servs., No. 17-187V, 2020 WL 414442 at *4 (Fed. Cl. Jan. 9, 2020) (denying motion for review of a decision reducing attorneys' fees and stating "legal training is not required to notify the Court that a document is being filed").

Here, a problem in reviewing some paralegal's invoices is that the time entry has blended some compensable activities and some non-compensable activities.  In the July 8, 2025 status conference, Mr. Homer and Mr. Pepper recognized that more specific billing entries with better descriptions can alleviate this problem going forward.  For example, if a person spends time OCRing medical records, the person can note how much time the process takes but also ascribe a "Do Not Bill" entry in the timesheets.  See, e.g., entry for Apr. 12, 2019 (timesheets at 40 / pdf 24).

To resolve this dilemma efficiently, $500.00 will be moved from the attorneys' fees to account for paralegals charging for clerical tasks. This amount is intentionally set at a relatively low amount, in part, because the Secretary did not interpose any objections. See Vaccine Rule 13(a)(3). The small reduction also reflects the willingness of the attorneys to improve. If the billings do not improve, larger deductions can be made in the future.

          c)      *Client Communications*

As the attorney primarily responsible for representing the Broussard family, Mr. Pepper communicated with his client(s) numerous times. Most of the entries provide almost no information about the substance or topic of the communication. See, e.g., timesheets at 24 / pdf 16 (Feb. 5, 2018: "Lengthy [phone call] with client re various case questions"); timesheets at 31 / pdf 20 (Apr. 20, 2018: "Email client re: portions of Vaccine Act"); timesheets at 42 / pdf 26 (June 6, 2019: "Review case file, Email client re: status").

The law on this topic is clear. In a precedential opinion, the Federal Circuit has evaluated the specificity expected in time entries for communications between attorneys and clients. The Federal Circuit held that some disclosure of the topic of the communication does not violate the attorney-client privilege and, therefore, affirmed a judgment that had reduced a fee request due to vague entries. Avgoustis v. Shinseki, 639 F.3d 1340 (Fed. Cir. 2011). The Court of Federal Claims, in turn, followed Avgoustis in denying a motion for review of a decision from reducing the amount requested in attorneys' fees due to vague entries. Abbott v. Sec'y of Health & Hum. Servs., 135 Fed. Cl. 107, 112 (2017). In Abbott, petitioner's counsel of record was Mr. Homer. Finally, the March 1, 2018 order alerted counsel about the requirements for client communications and cited Avgoustis. Against this backdrop, Mr. Broussard's attorneys cannot claim that the attorney-client privilege exempts them from disclosing some information about the nature of the communication.

Due to the vagueness of multiple billing entries regarding communications with the client, all of Mr. Pepper's time cannot be credited. However, as with the topic of clerical activities, only a small reduction of $500.00 is imposed. First, the Secretary did not interpose any specific objection. See Vaccine Rule 13(a)(3). Second, as Mr. Homer argued during the July 8, 2025 status conference, communications with clients are probably reasonable. Third, Mr. Homer again expressed a plan to improve the time entries created by the attorneys whom he supervises.

All other topics from the April 22, 2025 order were adequately addressed in the June 17, 2025 status report and/or during the July 8, 2025 status conference. Thus, the total reduction in attorneys' fees is $1,000.00. Mr. Broussard is therefore awarded $141,330.85.

### B. Costs Incurred

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). Petitioner requests a total of $25,112.66 in attorneys' costs. This amount is comprised of acquiring medical records, the Court's filing fee, postage costs, transcript costs, and expenses incurred by petitioner's expert (Dr. Napoli). Petitioner has provided adequate documentation supporting the requested costs and all are reasonable.

The one item worth discussion is the requested charge for the attorney who represented Sydney Broussard in becoming the representative of his wife's estate in California. Attorneys at Weiner Law in San Diego, California have charged $6,533.21 for their work. Fee Appl'n, tab B at 62-66.

After Dana Broussard died, her claim for compensation in the Vaccine Program could continue if a living person substituted for her as a petitioner. See Figueroa v. Sec'y of Health & Hum. Servs., 715 F.3d 1314 (Fed. Cir. 2013); Order, issued Feb. 27, 2023. In due course, Sydney Broussard became the representative of his wife's estate and became the petitioner. See Exhibit 88; order, issued Mar. 8, 2024.

Whether the Vaccine Injury Trust Fund should compensate Mr. Broussard for retaining an attorney to represent him in probate court depends upon whether the probate court proceeding was "a condition of receipt of the full compensation" provided through the Vaccine Program. McCulloch v. Sec'y of Health & Hum. Servs., 923 F.3d 998, 1003 (Fed. Cir. 2019). When an estate would have been created regardless of the pendency of the Vaccine Program claim, a petitioner is not entitled to reimbursement of all attorneys' fees and costs incurred in the probate court. Bourche v. Sec'y of Health & Hum. Servs., No. 15-232V, 2020 WL 6582180 (Fed. Cl. Spec. Mstr. Oct. 16, 2020).

Here, Mr. Broussard's November 4, 2024 motion simply submitted the invoice from Weiner Law without any explanation or justification. See Fees App.[2] Thus, additional information was requested. Order, issued Apr. 24, 2025.

In response, Mr. Broussard submitted the docket sheet from the probate court and an affidavit from Daniel Weiner. Exhibits 89-90. Mr. Weiner averred that "Petition for Letters of Administration was filed in order to maintain his wife's claim after her passing and receive the proceeds from the National Vaccine injury Compensation Program." He also averred that Dana Broussard did not have a will.

During the July 8, 2025 status conference, Mr. Homer and Mr. Pepper stated they understood that the only asset of Ms. Broussard's estate was the Vaccine Program claim. Then, after the Vaccine Program claim was denied (see Decision, issued April 4, 2024), the estate had nothing. After the status conference, Mr. Pepper submitted the application for a probate bond prepared by an attorney at Weiner Law, listing the only assets as a litigation settlement. Exhibit 91. This document constitutes persuasive evidence that Mr. Broussard sought to create his wife's estate solely to pursue the Vaccine Program claim. In other words, but for the pending claim in the Vaccine Program, the probate court fees and expenses would not have been incurred. Accordingly, Mr. Broussard is entitled to a reasonable amount of attorneys' fees and costs for the proceedings of the probate court.

As to the reasonableness of the request, the support for Weiner Law is meager. Mr. Weiner's affidavit regarding the charges says very little about how an hourly rate was determined. See Exhibit 90 ¶ IV. The invoice uses terminology whose meaning is not readily apparent to someone without familiarity with probate court procedures in California.

Nevertheless, Mr. Broussard is awarded the full amount requested by Weiner Law for two reasons. First, the Secretary did not interpose any specific objection. See Vaccine Rule 13(a)(3). Second, in the undersigned's experience, the overall amount requested is toward the upper bound of reasonable but still reasonable. And, the higher amount may reflect the expenses of living in southern California.

---

[2] Petitioner is reminded that "Failure to include complete documentation in support of the request may result in the denial, or reduction in amount, of an attorney's fees and costs award." Vaccine Rule 13(a)(1).

9

Petitioner is therefore awarded final attorneys' costs of $25,112.66.

Furthermore, the amount ($41.36) that petitioner has personally incurred is also reasonable.

### C. Additional Comments

With respect to two topics, Mr. Homer has committed to improve his firm's billing practices. These are (1) distinguishing between paralegal and clerical activities more carefully and (2) describing the topic of attorney-client communications more fulsomely. Improvements in these areas are likely to lead to fewer questions about the reasonableness of the proposed charge and to increased efficiency in reviewing fee applications.

The undersigned recognizes that these improvements will take time to implement. Conway Homer, P.C. represents many petitioners whose motions for attorneys' fees and costs are pending. Revising these motions would not be practical. Personnel at Conway Homer have also created time entries (say in 2024) in cases in which a fee motion has not been submitted. Revising these older entries is probably difficult but some adjustments might be made during the process of preparing the fee motion. See timesheets at 129 / pdf 69 (entry for Nov. 4, 2024 by Mr. Homer, charging 1.00 hour for reviewing fees and costs motion).

On the other hand, after the July 8, 2025 status conference and this decision, personnel at Conway Homer will be informed about how time entries should be created. Thus, going forward, there should be improved time entries.

## IV. Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, the undersigned awards attorneys' fees and costs as follows: a lump sum of **$166,484.87** (representing $141,330.85 in attorneys' fees, $25,112.66 in attorneys' costs, and $41.36 for petitioner's incurred costs) to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED**.

s/Christian J. Moran<br>
Christian J. Moran<br>
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.